## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

REBECCA HARRISON,     )
      Plaintiff,     )
                        )
      v.     )      CAUSE NO.: 2:08-CV-106-PRC
                        )
MICHAEL ASTRUE, Commissioner of the  )
Social Security Administration,     )
      Defendant.     )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff, Rebecca Harrison, on April 4, 2008, and a Plaintiff's Opening Brief [DE 20], filed on October 20, 2008. Plaintiff requests that the Court reverse the Commissioner's decision, finding her disabled for a closed period of time and denying Plaintiff's claim for Disability Insurance Benefits ("DIB") thereafter, and award her benefits, or, alternatively, remand this matter for further proceedings. On March 6, 2009, the Commissioner filed a Memorandum in Support of Remand and Response to Plaintiff's Opening, to which Plaintiff filed a Reply Brief on March 23, 2009. Pursuant to the Court's April 1, 2009 Order, on April 13, 2009, each party filed a Notice, detailing the issues requested to be remanded. For the following reasons, the Court remands this matter for further proceedings consistent with this Opinion and Order.

## PROCEDURAL BACKGROUND

On December 27, 2004, Plaintiff filed an application for a period of disability and DIB under Title II of the Social Security Act, alleging a disability onset date of June 15, 2002, and a later amended date of February 25, 2003. Plaintiff's application was initially denied on April 20, 2005,

and on reconsideration on July 1, 2005. Plaintiff then filed a timely request for a hearing.

A hearing was held on December 8, 2005, before Administrative Law Judge ("ALJ") Joseph P. Donovan, Sr., in Merrillville, Indiana, at which Plaintiff, her attorney Richard Vawter, and Vocational Expert Dr. Leonard Fisher appeared. On January 9, 2006, the ALJ issued a fully favorable decision finding Plaintiff disabled as of June 15, 2002.

The Office of Quality Assurance and Performance Assessment ("OQA") reviewed the ALJ's January 9, 2006 decision and referred this matter to the Appeals Council for Own-Motion Review under 20 C.F.R. 404.969. After submission of additional evidence and arguments, the Appeals Council vacated the ALJ's decision and remanded it back to him on April 27, 2006.

On remand, the ALJ conducted a new hearing on November 15, 2006, via video teleconference, during which Plaintiff, her attorney Richard Vawter, Medical Expert Dr. Carl G. Leigh, and Vocational Expert William J. Schweihs appeared. On January 12, 2007, the ALJ issued a partially favorable decision finding that Plaintiff was disabled from February 25, 2003, through March 16, 2004, and that subsequent to this date, there was medical improvement. Accordingly, the ALJ denied Plaintiff's application for DIB after the closed period.

Plaintiff sought review with the Appeals Council on February 5, 2007, but the Appeals Council denied her request on February 5, 2008, leaving the ALJ's decision as the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

# FACTS

## A. Plaintiff's Background

Plaintiff was forty five years old at the time of the ALJ's January 9, 2006 decision. Plaintiff is approximately five feet four inches tall and, at various periods throughout the proceedings, has weighed between 290 and 305 pounds. Plaintiff has a high school education and previously worked as a stocker, a janitor, and a clerk.

## B. Medical Evidence

On September 7, 2001, Plaintiff underwent an initial sleep study (polysomnogram[1]) which revealed an apnea/hypopnea index of 25.2 with an average oxygen saturation of 96%. The study also showed a desaturation index of 11.4 and a low oxygen saturation in the low 80 percentile range.

A September 20, 2002 exam indicated that Plaintiff suffered from fatigue, but that her respiratory fields were clear to auscultation. A January 17, 2003 prescription sheet from Dr. Sanders, MD, FCCP, indicates that Plaintiff is unable to tolerate the CPAP (continuous positive airway pressure) treatment for her sleep apnea. Further, a February 13, 2003 examination shows that Plaintiff suffered from sleep apnea, asthma, hypertension, morbid obesity and hypothyroid. An examination of Plaintiff's lungs revealed no abnormalities on auscultation.

On February 25, 2003, Plaintiff underwent a second sleep study which diagnosed mild obstructive sleep apnea syndrome[2] with a respiratory disturbance index score of 11.0 with 48 apneic

---

[1] A polysomnogram is a sleep study performed "for the evaluation of obstructive sleep apnea." Stephen L. Detmer, M.D., MPH, and Gunnar B.J. Anderson, M.D., Ph.D, DISABILITY EVALUATION 327 (Mosby, 2d ed., 2003).

[2] Obstructive sleep apnea is both an impairing and disabling condition and can produce significant daytime somnolence. "Diminished intellectual performance and personality disturbances are seen at the lower end of the

events and 26 hypopneic events.  The average oxygen saturation was 92% with desaturation down to 70%.  Snoring was also heavy at 44%.

On February 27, 2003, Plaintiff underwent a pulmonary function test[3] that revealed a small airway obstruction.  Spirometry results showed a normal FVC[4] level and FEV1[5] level, and a FEF25-75%[6] value of 1.95, or 62% of the predicted value.

A February 27, 2003 examination diagnosed that Plaintiff suffered from sleep apnea, insomnia, morbid obesity, hypertension, hypothyroid, and edema.  Plaintiff's lungs were again clear of auscultation.

A March 13, 2003 examination diagnosed Plaintiff with hypothyroid, sleep apnea, osteoarthritis, morbid obesity, hypertension, and insomnia.  Plaintiff underwent a respiratory examination on May 23, 2003, which diagnosed sleep apnea, asthma, hypertension, morbid obesity, arthralgias, and hypothyroidism.  Plaintiff's lungs were clear to auscultation.  A July 28, 2003 progress note diagnosed sleep apnea and insomnia and referred Plaintiff for a sleep study. Plaintiff's lungs were again clear to auscultation.

An August 6, 2003 respiratory examination at the Hammond Clinic indicated that Plaintiff had sleep apnea with fatigue and that her lungs were clear to auscultation with no evidence of

---

spectrum." *Id.* at 328.

[3] The purpose of a pulmonary function test is to determine "the degree of an impairment or deviation from normality in a person with a breathing disorder." *Id.* at 303.

[4] FVC refers to the forced vital capacity, which is the total amount of air that can forcibly be blown out after full inspiration.

[5] FEV1 refers to the forced expiratory volume, which is the amount of air that can be forcibly blown out in one second.

[6] FEF 25-75% refers to the forced expiratory flow.  A decreased FEF25-75% indicates small airflow obstruction.  *Id.* at 307.

wheezing. An October 9, 2003 respiratory examination at the Hammond Clinic diagnosed uncontrolled sleep apnea with fatigue. An October 10, 2003 otorhinolaryngology examination at the Hammond Clinic indicated complaints of sleep apnea and insomnia with frequent daytime somnolence.

A January 19, 2004 Hammond Clinic note assessed disorders of sleep apnea, insomnia, hypertension, asthma, and hypothyroidism. Plaintiff's lungs were again clear to auscultation. On March 16, 2004, Plaintiff underwent a pulmonary function test that diagnosed a mild airway obstruction with an FEF25-75% value of 1.874, 59% of the predicted value. The FEV1 and FVC levels were normal. An April 5, 2004 Hammond Clinic examination diagnosed insomnia. An April 16, 2004 respiratory note from the Hammond Clinic diagnosed sleep apnea, mild persistent asthma, hypertension, and morbid obesity with a weight of 291 pounds. An examination of Plaintiff's lungs indicated occasional wheezing. A July 9, 2004 respiratory examination note from the Hammond Clinic diagnosed asthma, sleep apnea, hypothyroidism, depression, and insomnia, with Plaintiff's lungs being clear to auscultation.

An August 6, 2004 respiratory exam indicates that Plaintiff has had difficulty falling asleep and diagnosed asthma, depression, morbid obesity, and sleep apnea. A November 16, 2004 respiratory examination note from the Hammond Clinic indicates that Plaintiff continued to suffer from sleep apnea, morbid obesity, asthma, and hypothyroidism, with her lungs showing no abnormalities.

Plaintiff underwent a neurology examination on April 13, 2005, which diagnosed sleep apnea. A July 26, 2005 examination diagnosed hypertension, asthma, hypothyroidism, insomnia, and sleep apnea.

On January 26, 2006, Plaintiff underwent a third sleep study, which revealed severe obstructive sleep apnea with an overall respiratory disturbance index of 75. The oxygen saturation dropped to a low of 86%. Plaintiff's baseline oxygen saturation was at 94%, consistent with her pulmonary dysfunction. Snoring was again present for most of the examination.

Plaintiff underwent neurology examinations on February 10, 2006, March 9, 2006, and April 11, 2006, all of which assessed intractable insomnia and obstructive sleep apnea. An October 9, 2006 neurology examination assessed obesity with hypothyroidism, familial insomnia, and severe sleep apnea.

## C. The November 15, 2006 Hearing

### 1. Plaintiff's Testimony

At the November 15, 2006 Hearing, Plaintiff testified to having attention and concentration problems because of her inability to sleep. Plaintiff further testified that she suffered from shortness of breath when she walked excessively or bent over, requiring her to sit down to recover. Plaintiff testified that she frequently woke up, gasping for air. She also testified that she was unable to tolerate the CPAP machine and that she had insomnia.

### 2. Testimony of the Medical Expert

Dr. Carl Leigh, M.D. ("the Medical Expert") testified that Plaintiff has hypertension without end organ damage, morbid obesity with a body mass index of 54, and asthma for which she takes numerous medications. The Medical Expert further testified that the February 2003 pulmonary function test showed a slight improvement as compared to the pulmonary function test that Plaintiff underwent in November 2000. He further testified that Plaintiff has obstructive sleep apnea based on the February 25, 2003 sleep study and that over the next three and a half years, it became

6

progressively more severe such that the January 26, 2006 sleep study indicated that Plaintiff had severe obstructive sleep apnea. The Medical Expert stated that the decreased oxygen saturation would impact a person's concentration, thinking, and attention, as well as probably produce somnolence and cause fatigue.

*3. Testimony of the Vocational Expert*

William J. Schweihs ("the VE") testified as the vocational expert at the November 15, 2006 Hearing. In response to the ALJ's first hypothetical, which did not include a limitation to unskilled work, the VE stated that there would be only sedentary jobs at the unskilled to low end of semi-skilled work. The VE provided that these positions would include cashier, telemarketer, surveillance system monitor, receptionist, and gate guard. The VE did not provide any DOT numbers for the identified positions and Plaintiff's counsel did not request this information.

In response to questioning by counsel for Plaintiff, the VE testified that if someone were off task ten minutes of every hour, only the telemarketer, receptionist, and gate guard positions would survive. After the ALJ further questioned the Medical Expert regarding asthma and sleep apnea, he added an additional limitation that due to Plaintiff's conditions, she would be off task and away from her work station an additional five minutes of every hour. The VE responded that this would prevent her from performing any of the jobs that he previously identified.

## D. ALJ's Decision

In the ALJ's January 12, 2007 decision, the ALJ determined that Plaintiff had the following severe impairments: morbid obesity, sleep apnea, asthma, and an affective disorder. The ALJ then determined that Plaintiff was disabled from February 25, 2003, through March 16, 2004, ("the closed period") but that based on subsequent medical evidence (consisting on the March 16, 2004

spirometry report, October 19, 2004 pulmonary examination, the August 15, 2005 electroencephalogram test, and lack of evidence of chronic asthma attacks) Plaintiff had medical improvement as of March 17, 2004. The ALJ determined that beginning on March 17, 2004, Plaintiff had the residual functional capacity ("RFC") "to perform a significant range of unskilled sedentary exertional level work." R. at 30. Accordingly, the ALJ denied DIB after March 17, 2004.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's

findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) . The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

**DISABILITY STANDARD**

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e), (f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are:

(1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to Step 2.

(2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to Step 3.

(3) Does the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to Step 4.

(4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5.

(5) Can the claimant perform other work given the claimant's residual functional capacity, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(iv); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004). At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's RFC.

"The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young*, 362 F.3d at 1000. The ALJ must assess the RFC based on all the relevant evidence of record. *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Id*. at 1000; *see also Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS[7]

Plaintiff argues that the ALJ committed reversible error by: (1) finding medical improvement in Plaintiff's conditions after March 17, 2004, that was related to Plaintiff's ability to work; (2) discounting the Medical Expert's credibility; (3) failing to provide adequate reasoning in support of the ALJ's RFC finding; (4) making a patently wrong credibility determination, with regard to Plaintiff's testimony, which did not comply with SSR 96-7p; (5) posing an incomplete hypothetical to the VE; and (6) failing to provide a clear decision sufficient to permit informed review. Further, Plaintiff requests that (7) the Court reverse these proceedings and award benefits to Plaintiff.

## A. ALJ's Finding of Medical Improvement

Plaintiff argues that the ALJ failed to show, and the record does not support, that medical

---

[7] As a preliminary matter, in a Notice filed on April 13, 2009, Plaintiff requests that remand be limited to the narrow issue of whether there was a medical improvement. Defendant requests remand on the entire case. The Court notes that Plaintiff's request for a narrow remand, solely on the issue of medical improvement, is based on her mistaken interpretation that Defendant challenges the ALJ's finding of a closed period of disability. As clarified in the Defendant's Notice of Issues, filed on April 13, 2009, Defendant actually challenges whether Plaintiff was disabled *after,* not *during*, the closed period. Further, Defendant's challenge of the Medical Expert's testimony, as noted below, is in response to Plaintiff's argument that the ALJ erred in relying solely on a portion of the Medical Expert's testimony, while disregarding other portions that are favorable to Plaintiff. In the Court's view, Defendant is trying to show that Plaintiff and the ALJ mischaracterized the Medical Expert's testimony, rather than challenging the ALJ's finding of a closed period of disability. Accordingly, the Court denies Plaintiff's request and will instead review all of the issues raised in Plaintiff's Opening Brief.

improvement occurred, or that any such improvement was related to Plaintiff's ability to work.

At Step 3 of the eight-step analysis utilized to evaluate whether a claimant's disability has ceased or continues, the ALJ must determine whether there has been any medical improvement when the claimant's impairments do no meet or equal the Listings. This determination is "made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence *or* absence of disability being drawn from the fact that the individual has previously been determined to be disabled." 42 U.S.C. § 423(f) (emphasis added); *see also* 20 C.F.R. § 404.1594(b)(6).

The regulations define "medical improvement" as:

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) (see § 404.1528).

20 C.F.R. § 404.1594 (b)(1). To determine whether medical improvement has occurred, the severity of the beneficiary's current medical condition is compared to the severity of the condition "at the time of the most recent medical decision that you were disabled." 20 C.F.R. § 404.1594(b)(1). The date of the most favorable medical decision is called the "point of comparison," 20 C.F.R.§ 404.1594(b)(7), which is sometimes referred to as the "comparison point date." However, when, as here, the ALJ finds that Plaintiff is disabled for a closed period in the same decision in which he found that a medical improvement occurred, the disability onset date is the "comparison point date."

*Booms v. Commissioner of Social Sec.*, 277 F. Supp. 2d 739, 745 (E.D. Mich. July 30, 2003); *see also Barajas v. Sullivan*, Civ. No. S90-506 (RDP), 1991 WL 670165, *6 (N.D. Ind. Dec. 30, 1991). Here, the ALJ found that Plaintiff was disabled starting on February 25, 2003, so this is

the comparison point date.

*1. Whether Substantial Evidence Supports a Finding of Medical Improvement*

The ALJ concluded that the Plaintiff was disabled for the closed period of February 25, 2003, through March 16, 2004. The ALJ noted that subsequent medical evidence indicated that Plaintiff subsequently had medical improvement as of March 17, 2004. In concluding that medical improvement occurred, the ALJ relied on the March 16, 2004 spirometry report, the October 19, 2004 pulmonary examination, the August 15, 2005 electroencephalogram (EEG), and the lack of evidence of any chronic asthma attacks. The Court will evaluate each in turn.

Plaintiff argues that the March 17, 2004 spirometry report indicates no medical improvement when compared to the February 27, 2003 pulmonary function test. While Plaintiff is correct that the FEV1 and FVC levels are in the normal range in both tests, the March 17, 2004 spirometry report indicates that the predicted (2.860 L) and actual (2.636 L) FEV1 levels improved over the predicted and actual levels noted in the February 27, 2003 pulmonary function test (2.78 L and 2.41 L, respectively). Nonetheless, the FEF25-75% value decreased between the February 27, 2003 pulmonary function test and March 17, 2004 spirometry test. Further, the February 27, 2003 test provides that Plaintiff had small airway obstruction, while the March 16, 2004 spirometry report notes that Plaintiff had mild airway obstruction. Accordingly, whether Plaintiff's asthma improved during the closed period, based on the spirometry report, is questionable. Here, the ALJ failed to articulate what data (or reports) he compared the spirometry report to and failed to articulate how the report's results showed a medical improvement. Therefore, it is unclear from the record if/how the spirometry report shows medical improvement.

The ALJ also found medical improvement based on the results of the October 19, 2004

13

pulmonary examination, which revealed that Plaintiff's lungs were clear to auscultation and there was no evidence of wheezing. A number of problems exist with the ALJ's reliance on this report to show medical improvement. As Plaintiff correctly points out, this test was conducted several months after the ALJ concluded that Plaintiff had medical improvement. Further, the fact that the examination indicated that Plaintiff's lungs were clear to auscultation and wheezing does not show medical improvement. Plaintiff underwent numerous examinations during the closed period which indicated that her lungs were clear to auscultation[8] and that no wheezing was present.[9] Further, the ALJ noted that the record contains no documented evidence of any chronic asthma attacks. However, this fact does not indicate any medical improvement as there is no indication that Plaintiff suffered from chronic asthma, even during the closed period. Accordingly, the ALJ's conclusion that Plaintiff's condition medically improved based on the October 19, 2004 examination is not supported by substantial evidence.

Finally, the ALJ relies on the August 15, 2005 EEG to support that Plaintiff underwent a medical improvement. Particularly, the ALJ noted that the EEG showed evidence of normal awake EEG without evidence of focal showing or epileptiform activity noted. The Court notes that this EEG was performed more than one year after the ALJ concluded that medical improvement occurred. Further, the EEG was specifically conducted to evaluate Plaintiff's insomnia, not her sleep apnea.[10] On February 25, 2003, Plaintiff underwent a sleep study which provided that Plaintiff

---

[8] *See* R. at 195, 209, 211, 213, 223.

[9] *See* R. at 209.

[10] Presumably, this is the condition for which the ALJ claims that this test shows there was a medical improvement. Although, as with the other tests that the ALJ relied on, the ALJ failed to articulate which severe impairments medically improved and what data he compared to determine medical improvement.

had mild obstructive sleep apnea. No further sleep study was conducted during the closed period. However, when the next sleep study was performed on January 26, 2006, it revealed that Plaintiff's sleep apnea worsened as she had severe obstructive sleep apnea. Further, during the closed period of disability, Plaintiff underwent several examinations that noted her continued sleep apnea and did not note improvement. Accordingly, the ALJ has failed to articulate how the EEG results indicate medical improvement in Plaintiff's conditions.[11]

After a review of the evidence and the ALJ's opinion, the Court concludes that the ALJ has failed to articulate which of Plaintiff's severe impairments medically improved and failed to create an accurate and logical bridge between the evidence and his conclusion of medical improvement. Accordingly, this matter must be remanded for the ALJ to consider all the evidence of record, including during the closed period, to determine if Plaintiff's impairments medically improved.

*2. Whether Medical Improvement is Related to Plaintiff's Ability to Work*

If there has been a medical improvement, the ALJ must determine if it is related to the plaintiff's ability to work, which may be shown by determining if there was an increase in the plaintiff's RFC based on the impairment that was present at the time of the most favorable medical determination. 20 C.F.R. § 404.1594 (c)(2), (f)(4). In making this assessment, the ALJ must evaluate the Plaintiff's ability to do basic work activities, including exertional and non-exertional abilities. 20 C.F.R. § 404.1594 (b)(4).

Here, the ALJ found that Plaintiff's alleged medical improvement was related to her ability to work. In support of this finding, the ALJ provided that "[i]n comparing the above residual

---

[11] The ALJ also notes that Plaintiff's weight at the time of the March 16, 2004 spirometry report was 298 pounds. However, as with the other evidence used by the ALJ, he failed to articulate how this shows that Plaintiff's morbid obesity improved.

functional capacities, I find that claimant's functional capacity for basic work activities has increased." R. at 30. The ALJ did not provide any other reason in support of this conclusion and relied on an RFC based, presumably,[12] on the same evidence that this Court has determined does not support his finding of medical improvement. The Court finds that the ALJ has failed to demonstrate that Plaintiff's RFC improved. Further, the ALJ's failure to articulate any reasoning as to how the alleged medical improvement is related to Plaintiff's ability to work leads the Court to conclude that even if Plaintiff's impairments medically improved, substantial evidence does not support that it was related to her ability to work.

### B. ALJ's Credibility Determination of Dr. Leigh

Plaintiff next argues that the ALJ erred in relying on a portion of the Medical Expert's testimony to find Plaintiff disabled for a closed period, but discrediting his testimony supporting disability beyond that period. Further, Plaintiff argues that the ALJ failed to articulate why he did not adopt all of the Medical Expert's testimony. Defendant argues that the Medical Expert's testimony does not support a finding of disability after the closed period.

While an ALJ is not required to address every piece of testimony and evidence, he cannot select and discuss only that evidence which favors his conclusion. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Rather, the ALJ must "minimally articulate his reasoning." *Zblewski v. Astrue*, 302 F. App'x 488, 493 (7th Cir. 2008). Further, the ALJ must weigh conflicting evidence from medical experts and attribute greater weight to the most pertinent evidence. *Young*, 362 F.3d at 1001.

---

[12] The ALJ provides that he considered "the evidence of record," without specifying what that evidence is. R. at 30.

Here, the ALJ relied on the Medical Expert's testimony to support his finding that Plaintiff was disabled beginning on February 25, 2003, but only gave his testimony partial weight because medical records showed that the claimant had medical improvement as of March 17, 2004. As previously noted, the medical records that the ALJ relied on, and his reasoning, do not support his conclusion of medical improvement. The Medical Expert testified that, as of February 25, 2003, Plaintiff had obstructive sleep apnea, but then stated that over the next three to three and a half years, her sleep apnea became progressively more severe, such that the January 26, 2006 sleep study indicated that Plaintiff had severe obstructive sleep apnea. This evidence directly conflicts with the ALJ's finding of medical improvement. Yet, the ALJ failed to acknowledge this evidence and did not address the Medical Expert's testimony regarding this sleep study. Instead, the ALJ, without further reasoning, discounted this portion of the Medical Expert's testimony.

While Defendant argues that further evidence supports that Plaintiff was not disabled after the closed period, his argument suffers from the same deficiencies as the ALJ's in that he relies on evidence of examinations well after the closed period and he disregards the portion of the Medical Expert's testimony regarding the January 26, 2006 sleep study.

Accordingly, the Court concludes that the ALJ failed to articulate his reasoning for discrediting portions of the Medical Expert's testimony and this matter must be remanded for the ALJ to reweigh Dr. Leigh's testimony.

### C.  The ALJ's RFC Finding

Plaintiff next argues that the ALJ failed to provide any reasoning as to how he arrived at Plaintiff's assessed RFC of being able to perform "a significant range of unskilled sedentary

exertional level work." R. at 30. The RFC is a measure of what an individual can do despite the limitations imposed by her impairments. 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(2); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at Steps Four and Five of the sequential evaluation process. SSR 96-8p. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*.

The ALJ's RFC finding must be supported by substantial evidence. *Clifford*, 227 F.3d at 870. Upon review of the record, the Court concludes that the ALJ's RFC finding is not supported by substantial evidence. The ALJ failed to articulate any reasoning or provide support for his conclusion that Plaintiff is capable of performing unskilled sedentary work. In making his RFC finding, the ALJ merely provided that "I considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence . . . I have also considered opinion evidence." R. at 30. "[A]fter considering the evidence of record," the ALJ made the RFC finding. *Id*. But other than making these broad statements about evaluating the record, the ALJ failed to specify what symptoms he considered, what opinion evidence he considered, and what "evidence of record" he reviewed. The ALJ thus failed to provide a logical bridge between substantial evidence and his RFC finding. Accordingly, the Court holds that the ALJ's RFC assessment was not supported by substantial evidence and remands this matter for further consideration of Plaintiff's RFC.

### D. The ALJ's Credibility Determination of Plaintiff's Testimony

Plaintiff contends that the ALJ's credibility determination, finding that her statements concerning the intensity, persistence and limiting effects of her symptoms were not credible

beginning on March 17, 2004, even though her statements were credible beforehand, was patently wrong and failed to comply with SSR 96-7p.

In making a credibility determination, SSR 96-7p states that the ALJ must consider the record as a whole, including objective medical evidence; the claimant's statements about symptoms; any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant; and any other relevant evidence. *See* SSR 96-7p. If an allegation of pain is not supported by the medical evidence and the claimant states that the inability to work is due to significant pain, the ALJ must obtain detailed descriptions of claimant's daily activities by making specific inquiries about the effects of the pain. *See Zurawski*, 245 F.3d at 887.

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find that a disability exists each time a claimant states that he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, SSR 96-7p provides that a claimant's statements regarding the intensity or persistence of her symptoms "may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citing *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)).

In addition, factors to be considered by an ALJ evaluating a claimant's complaint of pain include:

(i)      The individual's daily activities;
(ii)     The location, duration, frequency, and intensity of the individual's pain or other

<div style="margin-left: 2em;">

symptoms;

(iii)     Precipitating and aggravating factors;

(iv)     The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(v)     Treatment, other than medication, the individual received or has received for relief of pain or other symptoms;

(vi)     Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

(vii)     Other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

</div>

20 C.F.R. § 404.1529(c)(3); SSR 96-7p at *3.

Here, at the Hearing, Plaintiff testified that she suffered from shortness of breath when she walked excessively or bent over, requiring her to sit down to recover. Further, Plaintiff testified that her lack of ability to sleep affects her attention and concentration, and she continued to have problems with her sleep apnea. In his decision, the ALJ found that:

> After considering the evidence of record . . . the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible beginning on March 17, 2004, as the record shows that her condition improved . . .

R. at 30. "This is precisely the kind of conclusory determination SSR 96-7p prohibits." *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003). Aside from considering "the evidence of record," the ALJ failed to discuss the medical evidence in the record or the medical opinions and testimony. Specifically, the ALJ did not explain the weight given to Plaintiff's testimony and fails to provide any evidence of record in support of his credibility finding.[13] To the extent that the ALJ relies on the evidence allegedly showing medical improvement, the Court finds

---

[13] In fact, as previously noted, the ALJ failed to address the testimony of the Medical Expert that supported Plaintiff's statement that the sleep apnea effected her concentration and attention.

that he failed to articulate how this evidence discredits Plaintiff's testimony.

Further, although the ALJ cited SSR 96-7p, he failed to consider the factors set therein in such a way that would permit judicial review. The ALJ failed to consider Plaintiff's daily activities; the frequency and intensity of Plaintiff's pain or other symptoms; type, dosage, and effectiveness and side effects of any medicine that Plaintiff takes; or factors that aggravate Plaintiff's symptoms. Although it is not mandatory for the ALJ to consider each factor in SSR 96-7p, the ALJ may not make conclusory statements that Plaintiff's allegations were considered or that her allegations were not credible. *Butera*, 173 F.3d at 1055; *Zurawski*, 245 F.3d at 887.

Accordingly, the Court finds that the ALJ's review of the evidence is incomplete and, based on the current state of the record, the Court cannot conclude that the ALJ's credibility finding was patently wrong. Rather, the Court needs further explanation from the ALJ as to his credibility finding so that the Court can engage in informed review. Therefore, the Court remands this matter for further consideration of Plaintiff's credibility.

### E. The ALJ's Hypothetical to the VE

Plaintiff argues that the ALJ posed an incomplete hypothetical to the VE by failing to include a limitation to unskilled work, even though he did so in the RFC finding. The hypothetical that an ALJ poses to a VE must ordinarily include all limitations supported by the medical evidence of record. *Patty v. Barnhart*, 189 F. App'x 517, 521 (7th Cir. 2006). The hypothetical, though, need not include all of Plaintiff's alleged impairments. *Id.* An ALJ may rely on VE testimony, even if it is in response to an incomplete hypothetical "when the record supports the conclusion that the VE considered the medical reports and documents." *Id.* (quoting *Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 540-41 (7th Cir. 1992)).

Here, the ALJ found that Plaintiff had an RFC to perform a significant range of unskilled sedentary exertional level work. However, the ALJ's hypothetical to the VE failed to include a limitation to unskilled work. Plaintiff fails to cite any authority requiring the ALJ to include the type of work–in this case, unskilled work–that Plaintiff can perform in the hypothetical to the VE. In fact, determining the type of work that a claimant can perform falls squarely within the VE's responsibilities. *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). Nonetheless, because the Court has determined that Plaintiff's RFC must be reconsidered, the Court will also remand for the ALJ to repose the hypothetical, taking account of all of Plaintiff's limitations, to the VE.

### F. Clarity of the ALJ's Decision

Plaintiff next argues that the ALJ's decision is not stated in a clear manner sufficient to permit informed review. In addition to substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review. *Briscoe ex rel. Taylor*, 425 F.3d at 351. As noted above, the ALJ failed to articulate which of Plaintiff's severe impairments allegedly improved, what evidence he relied on in making his RFC, and what factors he relied on in making his credibility determination. Accordingly, remand would also be required on this ground. *See Castrejon v. Apfel*, 131 F. Supp. 2d 1053, 1057 (E.D. Wis. 2001).

### G. Remedy

Finally, Plaintiff requests that the Court reverse the Commissioner's decision and award benefits because the record indicates no medical improvement and Plaintiff has already spent years litigating this matter through administrative proceedings. In response, Defendant argues that the evidence of record does not compel a finding that Plaintiff was disabled after the closed period, thus requiring remand to properly weigh all of the evidence, rather than the award of benefits.

An award of benefits is appropriate "only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel. Taylor*, 425 F.3d at 356. This is not such a case. Here, the ALJ's opinion was not supported by substantial evidence because he failed to develop the record, leaving several issues unresolved, including whether Plaintiff underwent medical improvement. Further unresolved issues remain as to whether any such improvement is related to Plaintiff's ability to work, discrepancies between the Medical Expert's testimony and the ALJ's conclusion that she underwent medical improvement, as well as Plaintiff's RFC and credibility issues. These are all issues that can only be resolved through further proceedings on remand.[14] Accordingly, this matter is remanded for further proceedings.

**CONCLUSION**

For the foregoing reasons, the Court finds that the ALJ failed to create an accurate and logical bridge between the evidence of record and his finding of medical improvement, or that such improvement was related to Plaintiff's ability to work, failed to articulate his reasoning for discrediting portions of the Medical Expert's testimony, failed to provide adequate reasoning in support of his RFC finding, failed to provide sufficient reasoning in determining Plaintiff's credibility, should repose his hypothetical to the VE, failed to provide a sufficiently clear decision, and remand is the appropriate remedy in this matter. Therefore, to this extent the Court **GRANTS**

---

[14] To the extent that Plaintiff requests, in her Notice, that the Court preclude the Defendant from reconsidering whether Plaintiff was disabled during the closed period, the Court notes that this runs contrary to 20 C.F.R. § 404.988(b), which allows a determination or decision to be reopened by the Commissioner within four years of the date of the notice of the initial determination, if the Commissioner finds good cause, or at any time based on a number of different factors. *See* 20 C.F.R. § 404.988(b). Plaintiff has failed to provide the Court with any grounds upon which to preclude the Commissioner or the Social Security Administration from reopening this matter in the future, and, although the Court is not remanding for the ALJ to redetermine whether Plaintiff was disabled during the closed period, the Court declines to do so at this time.

the Plaintiff's Opening Brief [DE 20] and **REMANDS** this matter for further proceedings consistent

with this opinion.

SO ORDERED this 22nd day of April, 2009.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:    All counsel of record